IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20–CV–0090–BR

ABC PHONES OF NORTH CAROLINA, )
INC., d/b/a VICTRA, )
 )
        Plaintiff, )
v. )    ORDER
 )
ALI YAHYAVI, and WIRELESS WORLD, )
LLC d/b/a EXPERTS CHOICE, )
 )
        Defendants. )

This matter is before the court on Wireless World, LLC d/b/a Experts Choice ("Experts Choice" or "Wireless World"), and Ali Yahyavi's ("Yahyavi") (collectively "defendants") motion to dismiss ABC Phones of North Carolina, Inc., d/b/a Victra's ("Victra") claims. (DE # 25.) Victra filed a response in opposition. (DE # 29.) Thereafter, defendants filed a reply, (DE # 30). Also before the court is Victra's motion for a preliminary injunction, (DE # 19), to which defendants responded, (DE # 22), and Victra replied, (DE # 23). These matters have been fully briefed and are ripe for adjudication.

### I.    BACKGROUND

The statement of facts, taken from the court's previous order, is as follows:

"Victra operates stores as an authorized retailer for Verizon[,]" and "has been in the Wireless Retail Business since 1996." It employs "more than 4,500 people in over 1,000 locations across 46 states, including North Carolina and California." "In 2017, Yahyavi was employed by Victra as its Area Vice President of Sales in Victra's West Territory[.]"

"On or about May 30, 2019, Yahyavi resigned his employment from Victra[.]" "In exchange for monetary and other valuable consideration, Yahyavi executed an Agreement [("the Agreement")] including certain restrictive covenants with Victra on or about May 30, 2019[.]" One such covenant, hereinafter the "Non-Solicitation Clause," states in relevant part:

> Employee agrees that for twelve (12) months after the Effective Termination Date, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of or in conjunction with any person or legal entity. . . (c) recruit, solicit, or induce, or attempt to recruit, solicit, or induce, any employee of the Company or its related Parties to terminate their employment relationship with the Company for any reason whatsoever. . . .

On or around June 2019, Yahyavi joined Experts Choice as the Chief Sales Officer. He became the Chief Executive Officer of Experts Choice in February 2020 and currently serves in that role.

In the meantime, "[o]n or about June 4, 2019, Aaron Alaniz (Regional Director, Southern California) [] resigned from Victra." Other employees followed: Marco Bright (District Manager, Sacramento, California) on or around February 15, 2020, Nicholas Alexander (District Manager, Pacific-East, Washington) on or about March 1, 2020, and Michael Heuer (Regional Director, Pacific Northwest) on or about March 1, 2020. Additionally, "Yahyavi recently contacted Antonio Herrera, Regional Director of the Northern California territory for Victra," telling Herrera, "'If you ever need anything, I'll take care of you[,]'" Herrera "understood the purpose of his call was to encourage [him] to seek employment with Wireless World." Yahyavi disputes that the statement was made in an effort to recruit Herrera.

In total, Herrera states, "[w]ithin the last seven to ten days, 8 employees, including 5 Managers, have resigned their employment with Victra to begin working for Wireless World." "Only 3 managers remain employed by Victra to cover its Sacramento stores." Further, "[i]n February and March of 2020, at least three (3) District Managers have informed [Herrera] that [] Yahyavi, CEO of Wireless World, contacted them multiple times to recruit, induce, solicit and/or encourage them to leave Victra and work for Wireless World."

As a result, Victra purportedly has suffered irreparable harm, including the outlay of "additional resources to recruit, hire, and train new managers and to temporarily reassign employees which is outside the usual course of business," as well as "negatively impacted morale among Victra employees and [] a significant decrease in Victra's sales." Victra brings claims for breach of contract against Yahyavi, and tortious interference with the contract against Experts Choice, as well as a claim under the Unfair and Deceptive Trade Practices Act ("UDTPA") pursuant to N.C. Gen. Stat. § 75-1.1 against both defendants.

(Order, DE # 24, 1–4 (internal citations omitted).)

## II. DISCUSSION

### A. Motion to Dismiss

Defendants move to dismiss Victra's amended complaint for lack of personal jurisdiction over Experts Choice and failure to state a claim against either defendant.[1] (See Defs.' Mem., DE # 26, at 2.)

#### 1. Personal Jurisdiction

Defendants contend Victra "cannot establish specific jurisdiction because none of the activity that forms the basis for the action occurred in North Carolina" and "there are no allegations that Experts Choice 'purposefully availed itself'" of business in North Carolina to establish a nexus sufficient for specific personal jurisdiction.[2] (Defs.' Mem., DE # 26, at 5–6.) Victra contends Experts Choice "waived any challenge it may have had to personal jurisdiction by failing to present the issue to the court at the first possibility" and by actively participating in the litigation as it filed a notice of removal, response to Victra's motion for a temporary restraining order, and response to Victra's motion for expedited review, before filing this motion. (Pl.'s Resp. Opp'n, DE # 29, at 7.) Even if personal jurisdiction was not waived, Victra contends, "the Court has specific jurisdiction over Experts Choice based on Yahyavi's Agreement with Victra and Experts Choice's tortious interference with the Agreement." (Id. at 9.)

---

[1] Defendant alternatively argues for a transfer of venue should the court not dismiss Experts Choice. (Defs.' Mem., DE # 26, at 7.) The court does not address this argument as it concludes Experts Choice should be dismissed for the reasons discussed below.

[2] Defendants also argue that the court does not possess general jurisdiction over Experts Choice. (Defs.' Mem., DE # 26, at 5.) However, in its response, Victra does not contend that the court has general jurisdiction over Experts Choice. (Pl.'s Resp. Opp'n, DE # 29, at 8.) Therefore, the court will only analyze whether it has specific jurisdiction over Experts Choice.

### i.  Waiver

A party waives its personal jurisdiction defense if it does not raise it at the time it files a Rule 12 motion or an answer, whichever is first.  Fed. R. Civ. P. 12(h)(1); see e.g., Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002) ("Rule 12(h) contemplates an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance."); Bethlehem Steel Corp. v. Devers, 389 F.2d 44, 46 (4th Cir. 1968) (finding waiver when an attorney entered appearance but did not raise an "attack on personal jurisdiction" in either "a pre-answer motion or in the answer itself"); Convergence Techs. (USA), LLC v. Microloops Corp., 711 F. Supp. 2d 626, 632 (E.D. Va. 2010) ("[I]t is well-established that objections to personal jurisdiction must be raised at the time the first significant defensive move is made—whether it be by way of a Rule 12 motion or in a responsive pleading." (internal citation and quotation marks omitted)).

Furthermore, "in some circumstances, the actions of [a] defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." SAS Inst. Inc. v. World Programming Ltd., No. 5:10-CV-25-FL, 2011 WL 322408, at *2 (E.D.N.C. Jan. 28, 2011) (internal quotation marks and citation omitted); see Smith v. Am. Exp., No. CIV.A. 1:13-3014, 2014 WL 1338537, at *3 (S.D.W. Va. Mar. 31, 2014) ("[A] party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects of the litigation of the case even if the literal requirements of Rule 12(h)(1) have been met[.]" (citing 5C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1391 (3d ed.) (updated Apr. 2020)).  In those circumstances, courts consider the degree of defense participation in the litigation, such as "entering an appearance, filing motions

and requesting relief, or participating in hearings or discovery." U.S. to Use of Combustion Sys. Sales, Inc. v. E. Metal Prod. & Fabricators, Inc., 112 F.R.D. 685, 687 (M.D.N.C. 1986) (collecting cases); see Bel–Ray Co. v. Chemrite Ltd., 181 F.3d 435, 443 (3d Cir. 1999) (finding waiver of personal jurisdiction when defense moved for summary judgment and, after the motion was denied, moved to dismiss for lack of personal jurisdiction); Wyrough & Loser, Inc. v. Pelmor Labs., Inc., 376 F.2d 543, 547 (3d Cir. 1967) (finding waiver of personal jurisdiction when defense did not raise the question of personal jurisdiction until after participating in a hearing on a motion for preliminary injunction).

Defendants raise a timely personal jurisdiction defense in their first Rule 12(b) motion. Further, in the filings defendants made prior to their Rule 12(b) motion, they specifically preserved the objection to personal jurisdiction over Experts Choice. (See DE # 1, at 2 n.1; DE # 17, at 1 n.1.) Therefore, Experts Choice's participation in the litigation—filing a notice of appearance, a notice of removal, and response to plaintiff's motion for a temporary restraining order with objections to personal jurisdiction before being served—does not constitute waiver by active participation in litigation. See SAS Inst. Inc., 2011 WL 322408, at *2 (distinguishing between cases with active participation in court-ordered hearings and discovery from cases which involve minimal participation in pre-trial, injunctive motions for purposes of waiver).

### ii.     Application

> Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must establish personal jurisdiction by a preponderance of the evidence but need only make a prima facie showing. Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction. Grayson, 816 F.3d at 269. A court must also "construe all relevant pleading allegations in the light most

5

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."

UMG Recordings, Inc. v. Kurbanov, No. 19–1124, 2020 WL 3476993, at *3 (4th Cir. June 26, 2020) (publication forthcoming in the Federal Reporter, 3rd Series).

Personal "jurisdiction must be authorized by the long-arm statute of the forum state, and . . . must also comport with Fourteenth Amendment due process requirements." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citation omitted). North Carolina's long-arm statute extends jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment. Taylor v. Bettis, 976 F. Supp. 2d 721, 748 (E.D.N.C. 2013) (quoting ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 648 (4th Cir. 1997)). Therefore, "the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 132 (4th Cir. 2020) (citation omitted). In determining whether the court has specific jurisdiction, courts consider: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 302 (4th Cir. 2012) (citation omitted).

A court may exercise specific jurisdiction only if the cause of action arises from a defendant's purposeful contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum [s]tate and is therefore subject to the [s]tate's regulation.'" Bristol-Myers Squibb

6

Co. v. Superior Court, 137 S. Ct. 1773, 1780 (2017) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)); Fidrych, 952 F.3d at 139 (a specific jurisdiction inquiry is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" (internal citation omitted)).

The purposeful-availment test is flexible, see Tire Eng'g & Distribution, 682 F.3d at 302, and the Fourth Circuit Court of Appeals provides the following non-exclusive factors to guide a court's jurisdictional inquiry:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, 2020 WL 3476993, at *5 (internal citations omitted). The purposeful-availment test assesses the quality and nature of each of the subject defendant's contacts with the forum state. Tire Eng'g & Distribution, 682 F.3d at 301. "The inquiry is designed to ensure that [the defendant] is not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." UMG Recordings, 2020 WL 3476993, at *4 (internal citations omitted).

Experts Choice did not purposefully avail itself of the privilege of conducting business in North Carolina. Experts Choice is a corporation with offices in California and Nevada, (Am. Compl., DE # 7, ¶ 3), that does not conduct any business in North Carolina, (Yahyavi Aff., DE # 26-1, ¶ 4). There are no allegations that it has ever conducted business, (id.), had a business presence in, (id.), or owned property in North Carolina. The only "contact" with North Carolina is that Experts Choice committed a tortious act—encouraging Yahyavi to breach his contract

7

with Victra—which caused harm to Victra in North Carolina. Regarding that act, there is no contention or evidence that Experts Choice induced Yahyavi to breach the Agreement while he, or it, was in North Carolina. On its own, such a contact lacks quality to establish purposeful availment.[3] See Walden v. Fiore, 571 U.S. 277, 290 (2014) (finding the fact that plaintiff's injury was felt in the forum state not enough to establish specific jurisdiction because "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way"). Absent additional contacts with North Carolina, Victra has failed to make a *prima facie* showing to subject Experts Choice to personal jurisdiction. Defendants' motion will be allowed on this ground, and Experts Choice will be dismissed as the court lacks personal jurisdiction over it.

2. **Failure to State a Claim**

"The intent of Rule 12(b)(6) is to test the sufficiency of a complaint." Dinh Tran v. Coty, Inc., No. 5:10–CV–431–H, 2011 WL 6325970, at *1 (E.D.N.C. Dec. 13, 2011) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). "A district court should dismiss a complaint pursuant to Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege enough facts to state a claim to relief that is plausible on its face." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 539 (4th Cir. 2013). "[T]he court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted

---

[3] Plaintiff relies on Calder v. Jones, 465 U.S. 783, 789 (1984), for support that this court does have personal jurisdiction over Experts Choice. In Calder, the Supreme Court found specific jurisdiction over the National Enquirer in the State of California even though it was a Florida corporation with its principal place of business in Florida, because it sold a weekly national newspaper with purposeful circulation in California and the alleged harm—damage to plaintiff's reputation— was felt in California. Id. at 789–90. Similarly, here plaintiff's alleged harm is felt in State of North Carolina. However, as established above, the contacts between Experts Choice and North Carolina are significantly less than those in Calder. See Walden v. Fiore, 571 U.S. 277, 290 (2014) ("Calder made clear that mere injury to a forum resident is not a sufficient connection to the forum.").

inferences, unreasonable conclusions, or arguments." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (internal quotation marks and citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### i. Breach of Contract

The Agreement provides that North Carolina law shall govern any dispute between Victra and Yahyavi. (Termination Agreement, DE # 7-1, ¶ 8.) In arguing Victra has failed to state a breach of contract claim, defendants first contend that "the choice of law provision [in the Agreement] should not be honored because California has a materially greater interest in the matter than North Carolina and absent the choice of law provision, the law of California would apply." (Defs.' Mem., DE # 26, at 13 (citing Cable Tel Servs., Inc. v. Overland Contracting, Inc., 574 S.E.2d 31, 34 (N.C. App. 2002).) Victra responds contending "[it] is incorporated in North Carolina, North Carolina has a substantial relationship to the parties and the parties had a reasonable basis for selecting North Carolina law." (Pl.'s Resp. Opp'n, DE # 29, at 19.)

Courts do not typically resolve choice of law disputes on a motion to dismiss, rather, they ask whether the plaintiff states a claim under one of the potentially applicable bodies of law. See Terry v. Swift Transportation, No. 1:16-CV-256, 2017 WL 1013074, at *7 (M.D.N.C. Mar. 14, 2017) (collecting cases), report and recommendation adopted, 2017 WL 2881141 (M.D.N.C. July 6, 2017), aff'd, 771 F. App'x 245 (4th Cir. 2019); Anderson Gustafsson Advokatbyra, KB v. eScrub Sys. Inc., No. 1:10–CV–632, 2011 WL 677053, at *2 (E.D. Va. Feb. 15, 2011). Because

9

Yahyavi and Victra, a North Carolina corporation, entered into a contract choosing North Carolina in a forum selection clause, (Termination Agreement, DE # 7-1, ¶ 8), the court will consider whether Victra states a breach of contract claim against Yahyavi under North Carolina law, see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 600–01 (4th Cir. 2004) ("North Carolina . . . typically[s] gives effect to contractual choice-of-law provisions."); Schwarz v. St. Jude Med., Inc., 802 S.E.2d 783, 788 (N.C. Ct. App. 2017) ("Under our choice-of-law principles, the interpretation of a contract is governed by the law of the place where the contract was made.") (internal quotation marks and citations omitted).

Defendants next contend that the Agreement's "Non-Solicitation Clause is impermissibly vague and overbroad, and thus, invalid under North Carolina law." (Defs.' Mem., DE # 26, at 16.) Specifically, defendants challenge the Agreement's terms which prohibit Yahyavi's "'direct or indirect' recruitment, solicitation, or inducement of any employee of the company, wherever located, 'for any reason whatsoever' and without defining – or cabining – the terms 'recruit, solicit, or induce.'" (Id. at 16–17 (alterations and citation omitted).) Additionally, defendants contend that Victra has failed to plausibly allege breach of the Agreement because it is based upon conclusory assertions alleged solely upon information and belief. (Defs.' Reply, DE # 30, at 8.) Victra contends it has sufficiently alleged a breach of contract claim as the Non-Solicitation Clause is reasonable and enforceable under North Carolina law and that it has sufficiently alleged breach of that Agreement. (Pl.'s Resp. Opp'n, DE # 29, at 19–22, 24.)

> [I]n North Carolina, restrictive covenants between an employer and employee are valid and enforceable if they are (1) in writing; (2) made part of a contract of employment; (3) based on valuable consideration; (4) reasonable both as to time and territory; and (5) not against public policy.

United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 380 (N.C. 1988) (citing A.E.P. Industries v. McClure, 302 S.E.2d 754 (N.C. 1983)); see Superior Performers, Inc. v. Meaike, No.

10

1:13CV1149, 2014 WL 1412434, at *5 (M.D.N.C. Apr. 11, 2014) (applying this standard to a non-solicitation agreement regarding a company's employees and independent contractors, as opposed to an employer's clients). Whether undefined contract terms are enforceable in a restrictive covenant depend on the plain meaning of the terms, <u>Inland Am. Winston Hotels, Inc. v. Crockett</u>, 712 S.E.2d 366, 369 (N.C. Ct. App. 2011), and the context and scope of the terms as applied in the agreement, <u>Superior Performers</u>, 2014 WL 1412434, at *10 (collecting cases).

> Here, the Non-Solicitation Clause states:
>
> Employee agrees that for twelve (12) months after the Effective Termination Date, Employee shall not, directly or indirectly, on Employee's own behalf or on behalf of or in conjunction with any person or legal entity. . . (c) recruit, solicit, or induce, or attempt to recruit, solicit, or induce, any employee of the Company or its related Parties to terminate their employment relationship with the Company for any reason whatsoever. . . . Employee acknowledges that he/she has received adequate consideration for agreeing to the terms set forth in this subsection and that the restrictions contained herein are reasonably tailored so as not to be unduly burdensome on Employee and to protect the legitimate business interest of Company and its Related Parties.

(Termination Agreement, DE # 7-1, ¶ 5(E).) The terms recruit, solicit, or induce, are not impermissibly vague by their plain meaning or as applied to the Agreement as a whole, because this clause applies only to employees, which is a clear, finite number of people. See <u>Superior Performers</u>, 2014 WL 1412434, at *10 (finding the terms "indirectly or directly" did not render a restrictive covenant unreasonable when that covenant prohibited defendant from soliciting or hiring a finite group of individuals, specifically plaintiff's current employees and independent contractors); <u>Inland Am. Winston Hotels</u>, 712 S.E.2d at 369 (holding that the terms "solicit," "recruit," and "induce" are unambiguous and their plain meanings apply to non-compete agreements); cf. <u>MJM Investigations, Inc. v. Sjostedt</u>, 698 S.E.2d 202 (N.C. Ct. App. 2010) (finding a non-solicitation clause which covered clients including prospective clients as unreasonable and unenforceable).

Additionally, defendants argue that Victra has not sufficiently alleged breach of contract because its allegations are conclusory, (Defs.' Mem., DE # 26, at 18, 20), and many of its "relevant allegations[] are based solely upon its information and belief[,]" (id. at 2 n.1). For purposes of motion to dismiss, the allegations contained in the amended complaint based "upon information and belief" are sufficient for the district court to consider. (See Am. Compl., DE # 7, ¶¶ 19, 25–27, 29, 32); see also Bailey v. Virginia Dep't of Alcoholic Beverage Control, No. 2:18CV392, 2019 WL 2590796, at *5 (E.D. Va. Apr. 25, 2019) (collecting cases) (pleadings at the motion to dismiss stage based "upon information and belief" are appropriate for the district court to consider "when the factual basis supporting a pleading is only available to the other party"). The court concludes Victra has sufficiently alleged breach of the Agreement.

Defendants' motion to dismiss this claim will be denied.

### ii. UDTPA

Defendants contend Victra fails to state a claim under the North Carolina UDTPA because it does not allege any substantial aggravating factors beyond Yahyavi's breach of contract. (Defs.' Mem., DE # 26, at 20.) Victra contends Yahyavi's contact with one of its managers to solicit him to quit and work for Experts Choice is deceptive under N.C. Gen. Stat. § 75-1.1 and constitutes a substantial aggravating circumstance accompanying his breach of the Agreement. (See Pl.'s Resp. Opp'n, DE # 29, at 28–29.)

> In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff. A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. The determination as to whether an act is unfair or deceptive is a question of law for the court.

Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001) (internal citations omitted).

12

> [U]nder North Carolina law, the conduct sufficient to constitute an unfair or deceptive trade practice "is a somewhat nebulous concept," and depends on the circumstances of the particular case. One thing is clear, however: "[O]nly practices that involve '[s]ome type of egregious or aggravating circumstances' are sufficient to violate the U[D]TPA.

ABT Bldg. Prod. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 122–23 (4th Cir. 2006) (internal citations and quotation marks omitted) (alternations in original). A breach of contract claim on its own, absent substantial aggravating circumstances, does not state a claim under the UDTPA. See Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019) (collecting cases). The allegations against Yahyavi constitute nothing more than breach of contract. Victra failed to plead any aggravating circumstances surrounding its claim against Yahyavi for breach of contract. Additionally, the tortious interference claim in Victra's amended complaint is solely against Experts Choice (who is being dismissed from this action for lack of personal jurisdiction). Cf. Roane-Barker v. Se. Hosp. Supply Corp., 392 S.E.2d 663, 670 (N.C. 1990) (finding "tortious interference with a restrictive covenant by a competitor stated a claim for unfair and deceptive trade practices under § 75–1.1"); Sandhills Home Care, L.L.C. v. Companion Home Care-Unimed, Inc., No. 15 CVS 3329, 2016 WL 4164460, at *16 (N.C. Super. Ct. Aug. 1, 2016) (finding plaintiff stated a claim under the UDTPA for allegations of tortious interference and breach of contract). Therefore, Victra fails to state a UDPTA claim against Yahyavi, and this claim will be dismissed.

**B.     Motion for Preliminary Injunction**

A party seeking a preliminary injunction must make a clear showing that:

(1) they are likely to succeed on the merits; (2) they will likely suffer irreparable harm absent an injunction; (3) the balance of hardships weighs in their favor; and (4) the injunction is in the public interest.

13

League of Women Voters of N. Carolina v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)); accord Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  A district court does not need to "mechanically consider all four Winter factors if one is clearly absent."  Henderson for Nat'l Labor Relations Bd. v. Bluefield Hosp. Co., LLC, 902 F.3d 432, 439 (4th Cir. 2018) (citing Winter, 555 U.S. at 20); accord In re Search Warrant Issued June 13, 2019, 942 F.3d 159, 171 (4th Cir. 2019).

While Victra sufficiently alleges a breach of contract claim for purposes of Rule 12(b)(6), at this stage of the proceedings there are factual disputes, namely whether Yahyavi breached the contract.  (Compare Yahyavi Aff., DE # 27-1, ¶¶ 6–8, with Balot Aff., DE # 20-1, ¶¶ 13–15, 17.)  Therefore, Victra has not clearly shown that it is likely to succeed on the merits of the action.  See Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009) ("Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial."); BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 195 F. Supp. 3d 776, 801 (D. Md. 2016) ("Post-Real Truth courts have declined to issue a preliminary injunction when there are significant factual disputes in breach of contract cases." (internal citation and quotation marks omitted)).  Victra's motion for a preliminary injunction will be denied.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is ALLOWED IN PART and DENIED IN PART.  Experts Choice is DISMISSED WITHOUT PREJUDICE from this action.

Victra's UDTPA claim against Yahyavi is DISMISSED.  Victra's motion for a preliminary injunction is DENIED.

This 22 July 2020.

_____
W. Earl Britt
Senior U.S. District Judge